*747 TEXTO COMPLETO DE LA SENTENCIA
Ruth Ruiz Rodríguez, su esposo y la Sociedad Legal de Gananciales compuesta por ambos, recurren de la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, en virtud de la cual dicho foro, luego de una vista en su fondo, desestimó la demanda presentada por éstos.
Evaluada toda la documentación ante nos, incluyendo la exposición narrativa, a la luz del derecho aplicable, se resuelve confirmar el dictamen recurrido.
I
En el mes de junio de 1994, los aquí apelantes presentaron una demanda contra los apelados de epígrafe. En la misma se alegó, en síntesis, que los médicos co-demandados habían sometido a la señora Ruiz a un procedimiento quirúrgico sin que ésta hubiese prestado un consentimiento informado para el mismo, ya que no se le informó que una radiografía tomada cinco días antes de la operación resultó negativa.
Luego de contestada la demanda y los trámites procesales de rigor, se celebró una vista en fondo el 18 de agosto de 1998. En la misma se estipuló la siguiente prueba documental:
"Exhibit 1: Tres (3) placas del CT Sean realizado el día 13 de septiembre de 1991 y el reporte de las mismas tomadas en el Hospital de la Concepción.

Exhibit 2: Seis (6) placas del CT Sean realizado el día 14 de diciembre de 1991 y el reporte de las mismas tomadas en el Centro de Diagnóstico de Rayos X de Mayagüez.

Exhibit 3: Récord médico del Hospital Bella Vista de la hospitalización de la demandante el día 21 de enero de 1992 la cual incluye placa número 3856 y el reporte de la misma. El récord consta de cincuentitrés (sic) (53) folios.

Exhibit 4: Récord médico de la demandante de la oficina del Dr. Antonio Padua. Consta de un (1) folio.

Exhibit 5: Récord médico de la demandante de la oficina del Dr. Juan E. Suris Alvarez. Consta de catorce (14) folios.

Exhibit 6: Curriculum Vitae y transcripción de créditos de la Universidad Interamericana Recinto de San Germán de la Sra. Ruth Ruiz Rodríguez. Consta de tres (3) folios.

Exhibit 7: Reporte del 'barium swallow' del día 4 de enero de 1991 realizado por el Dr. Moisés Acevedo en el Centro Radiológico del Oeste. Consta de un (1) folio.

Exhibit 8: Currículum Vitae del Dr. Félix I. León. Consta de nueve (9) folios.

Exhibit 9: Currículum Vitae del Dr. Juan F. Suris Alvarez. Consta de un (1) folio.

Exhibit 10: Currículum Vitae del Dr. Antonio Padua Ramos. Consta de nueve (9) folios.

Exhibit 11: Informe Pericial del Dr. Félix I. León (se ha estipulado su autenticidad, no su contenido). Consta 
*748
de tres (3) folios. ”

Por la parte demandada se admitió como Exhibit 1 para fines de impugnación de récord médico de la paciente en la Clínica de Medicina Interna del Dr. Femando Torres Santiago.
También se consignaron las siguientes estipulaciones de hechos:

“1. La demandante, Ruth Ruiz Rodríguez, fue referida para evaluación al Dr. Juan Suris por el Dr. Antonio Padua..

2. La demandante, Ruth Ruiz Rodríguez, se realizó una toractomía el 22 de enero de 1992 en el Hospital Bella Vista.

3. El Dr. Juan Suris fue el cirujano que realizó la toractomía.

4. La operación realizada, el 22 de enero de 1992, se realizó, conforme a la exigencia de la cirugía médica reconocida en el área.

5. No hubo complicaciones médicas como consecuencia de la operación antes mencionada.

6. El Dr. Antonio Padua estuvo presente en la toractomía realizada a la Sra. Rodríguez, el 22 de enero de 1992.

7. El Dr. Julio Toro, neumólogo, examinó y refirió a la paciente (demandante) al cirujano torácico, Dr. Salvador Jiménez, quien recomendó a la Sra. Ruth Ruiz Rodríguez se sometiera a una intervención quirúrgica para determinar el diagnóstico de la masa y/o mancha que aparecía en los estudios que éste había examinado, los cuales son:

a. C.T. Sean del 13 de septiembre de 1991.

b. Radiografía previa a septiembre de 1999.

c. Estudio de ’Barium Swallow’

La prueba de la parte demandante consistió en el testimonio de la Sra. Ruth Ruiz y de su esposo el Sr. Miguel Nazario Arroyo. Practicada dicha prueba de la parte demandada solicitó la desestimación del caso al amparo de la Regla 39.2 (c) de las de Procedimiento Civil debido a que los demandantes no habían establecido mediante prueba pericial que la información que se le dio no era suficiente para dar un consentimiento informado, conforme a las exigencias de la profesión y normas a estos fines.

El Tribunal solicitó que los abogados sometieran sus planteamientos por escrito y suspendió la continuación del juicio hasta tanto se resolviera la controversia.

La parte demandada argumentó sobre la necesidad de prueba pericial para establecer la causa de acción, la presunción sobre el juicio del médico y la diferencia entre lo que refleja un CT Sean que es alegadamente una prueba más especializada que una radiografía.

La demandante, por su parte, adujo que la Regla 39.2 exigía tomar como cierto lo establecido por ésta en su tumo de prueba y el alcance de haber ocultado el resultado de esa radiografía a la paciente cuando luego, en efecto, no se detectó ninguna masa en el mismo."

El foro recurrido dictó la sentencia desestimatoria de la cual se recurre. En la misma, entre otros, dispuso *749 como sigue:

“De lo antes expuesto, se desprende que en el caso de autos la demandante tenía que demostrar los siguientes elementos:

1. Que el médico tenía el deber jurídico de informarle a la paciente el resultado de la radiografía negativa y que ese deber surgía porque el mismo era la práctica prevaleciente en la profesión médica.

2. Que seguramente se hubiera evitado la intervención de haberse dado la información.

3. Que se produjo un daño.

4. Que la causa adecuada del dañó fue la omisión del médico en ofrecer la información. ”

Aun cuando de la prueba practicada pudiéramos estimar probados los elementos 2, 3 y 4, no podemos colegir que el primer elemento fue demostrado. La evidencia aportada en modo alguno puso al tribunal en condiciones de determinar que una radiografía tomada antes de la operación para propósitos de determinar si la paciente resistiría o no el procedimiento, debía ser informado a ésta cuando los cirujanos tenían el beneficio de estudios más especializados como tomografías computarizadas (C.T. Scan) y un 'Barium Swallow'. No se aportó prueba de peritos médicos que testificaran sobre la práctica generalizada de la medicina en estos casos y sobre el manejo, uso y efecto de los exámenes y análisis pre-operatorios. Tan siquiera se ilustró al tribunal con literatura médica que nos permitiera imponer el deber jurídico alegadamente incumplido por los demandados.
Nótese que aquí los médicos informaron a la paciente que el propósito de la cirugía era determinar la naturaleza de una masa o mancha que más de un estudio revelaba. Más de un galeno le indicó a la paciente que tenía que someterse a cirugía porque la naturaleza de la lesión pulmonar que se había detectado no podía determinarse de otra forma. De hecho, la toractomía realizada era un procedimiento diagnóstico, mas que un tratamiento dirigido a tratar la condición de la paciente. Serviría para descartar o confirmar la sospecha de una enfermedad más grave como podía ser un cáncer en el pulmón. Nótese que a la paciente se le informó del tipo de tratamiento, de los riesgos y el propósito del procedimiento quirúrgico y el mismo fue conducido sin complicaciones.
El planteamiento de la demandante es que el hecho de la información no debe analizarse desde el punto de vista del médico, sino desde el punto de vista del paciente. Sin embargo, este argumento fue rechazado enfáticamente por nuestro Tribunal Supremo en el caso de Sepúlveda, supra. El criterio subjetivo de la paciente no puede ser considerado, pues la norma de derecho prevaleciente en nuestra jurisdicción impide que el tribunal entre en lo que hubiera sido el proceso decisional del sujeto agraviado. Lo importante es que se demuestre el deber jurídico del médico, lo que en este caso no ha podido ser establecido. (Sentencia recurida, Apéndice XI).
En su recurso, los apelantes plantean, en síntesis, que el foro sentenciador apreció incorrectamente los hechos y aplicó erróneamente el derecho. Plantea, además, que el tribunal incidió al desestimar la demanda fundándose en la falta de prueba pericial de los aquí apelantes. 
Sostienen los apelantes que el presente caso es uno de "ocultación de información pertinente previa a la operación y que no tiene que ver con los riesgos que podrán ser esperados de ésta y que a todas luces tenía el propósito de minar el proceso decisional de la paciente para forzar su aceptación". Escrito de apelación, pág. 14. (Enfasis nuestro.) No estamos de acuerdo.
II
La norma de cuidado médico exigible al amparo del Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R. A. 5141, es aquella atención médica que a la luz de los modernos medios de comunicación y enseñanza y conforme al estado de conocimiento de la ciencia y de la práctica de la medicina, satisfacen las exigencias *750 generalmente reconocidas por la profesión. Ramos Robles v. García Vicario, 93 J.T.S. 167, pág. 11397; Ríos Ruiz v. Mark, 119 D.P.R. 816, 820. Los tribunales han rechazado imponer responsabilidad al médico que ha utilizado su buen juicio profesional y el mismo es cónsono con lo razonablemente aceptado por muchos sectores de la profesión médica. Id. Un error de juicio honesto y razonable basado en un desacuerdo latente entre las autoridades médicas sobre el diagnóstico o tratamiento recomendable, no constituye un acto negligente que sujete a responsabilidad torticera. Ríos Ruiz v. Mark, supra, a la pág. 821. Al médico lo acompaña la presunción de que ha ejercido un grado razonable de cuidado y de que el tratamiento fue adecuado. El que un paciente haya sufrido un daño o que el tratamiento no haya tenido éxito, no crea ninguna presunción de negligencia por parte del médico. Rodríguez Crespo v. Hernández, 121 D.P.R. 633, 650 (1988). Corresponde a la parte demandante demostrar, mediante preponderancia de pmeba, que el tratamiento médico ofrecido por el demandado fue la causa eficiente que con mayor probabilidad ocasiono el daño. Cruz v. Centro Médico de Puerto Rico, 113 D.P.R. 719 (1983).
Para establecer prima facie un caso de daños y perjuicios por negligencia de un médico, el demandante tiene: (1) que presentar pmeba sobre las normas mínimas de conocimiento y cuidado médico aplicables a los generalistas o a los especialistas; (2) que demostrar que el demandado incumplió con estas normas en el tratamiento del paciente, y (3) que esto fue la causa de la lesión sufrida por el paciente. Medina Santiago v. Vélez, 120 D.P.R. 380, 385 (1988). En el caso de un especialista, éste debe tener los conocimientos profesionales, así como las destrezas y competencias de los médicos o especialistas con la misma especialidad. Id., a la pág. 384.
Un diagnóstico correcto depende de la recopilación y análisis de la información... "Este proceso demanda conocimientos abarcadores y nociones en esta rama del saber. Reconocer sus propias limitaciones y saber cuando referir un paciente a otro médico o acceder a cualquier consulta que éste o sus familiares interesen, es procedente y representa un curso de acción normal y contemplado del proceso. Además de ese historial, se impone el uso auxiliar de pruebas rutinarias, sencillas y económicas de laboratorio para diagnosticar la condición de un paciente. Su omisión también puede ser motivo para incurrir en responsabilidad por negligencia." (Citas omitidas). Pérez Cruz v. Hospital de la Concepción, 115 D.P.R. 721, 736 (1984).
De otra parte, las normas prevalecientes sobre consentimiento informado se recogen en Sepúlveda v. Barreto Domínguez, 137 D.P.R. 735 (1994). En el mismo, nuestro más alto foro dispuso, entre otros.

"En el pasado nos hemos expresado sobre el deber médico de suministrar al paciente información sobre la naturaleza del tratamiento, los riesgos y los beneficios. La cuestión no es sencilla, pues existe diversidad de criterios. Los tribunales estatales en los Estados Unidos están divididos en dos tendencias con casi igual número de jurisdicciones adeptas. La tendencia mayoritaria es darle a este deber el alcance que determina la práctica prevaleciente en la comunidad médico. Algunos tribunales, al adoptar este criterio, han sostenido que una que el actor prueba que el médico falló en informarle de riesgos inherentes a un procedimiento, el peso de la prueba recae sobre éste, quién deberá probar que esa omisión está avalada por la práctica prevaleciente de la medicina. Estas jurisdicciones requieren generalmente que el demandante ofrezca el testimonio pericial para establecer que: (1) un profesional médico razonable, siguiendo las exigencias prevalecientes en la práctica de la profesión, y situado en circunstancias similares, hubiera divulgado la información; y (2) que el demandado no cumplió ese criterio profesional prevaleciente".

El Tribunal Supremo rechazó el criterio del paciente razonable originado en Canterbury v. Spence, 464 F2nd 772 (1972), y adoptó, por el contrario, el criterio del profesional de la medicina. Id., pág. 546. Bajo este criterio se le requiere al demandante presentar pmeba pericial para establecer que en dicha situación en particular, la mejor práctica de la medicina requería la divulgación de la información y que el demandado no cumplió con dicho requisito.
En el caso ante nos, los apelantes alegan que no se le informó sobre la existencia de una placa negativa de pecho que se le realizó el 17 de enero de 1992. Se admitió como exhibit 1 y 2, por estipulación, los resultados de unos estudios de CT Sean realizados los días 13 de septiembre y 14 de diciembre de 1991 que indicaban la existencia de una masa en el pulmón de la demandante Ruth Ruiz Rodríguez. También se admitió como exhibit 1 *751 de los demandados, el récord médico de la señora Ruiz Rodríguez con el Dr. Femando Torres Santiago, donde surge la existencia de una placa negativa de pecho del 7 de agosto de 1991. La demandante Ruiz Rodríguez admitió en el contrainterrogatorio que conocía la existencia de dicha placa negativa del 7 de agosto de 1991 cuando acudió a operarse el 22 de enero de 1992.
La única prueba presentada por la parte apelante fue el testimonio de la Sra. Ruth Ruiz Rodríguez y de su esposo el Sr. Miguel Nazario Arroyo. El testimonio de ambos se limitó a sostener que la apelante no se hubiera sometido a la operación si hubiese conocido que la placa preoperatoria del 17 de enero de 1992 era negativa. Esto a pesar de que dicha placa no era la primera porque había una negativa del día 7 de agosto de 1991 y que existía dos CT Sean, que son estudios más especializados que indicaban la existencia de una masa en el pulmón. Los apelantes no presentaron pmeba pericial de clase alguna que estableciera las normas mínimas de consentimiento informado.
Con estos antecedentes, se confirma la sentencia recurrida.
Notifíquese.
Así lo pronunció y manda el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIO 2001 DTA 37
1. “Primer error: Erró el Honorable Tribunal en la apreciación de los hechos y en aplicación del derecho al conceder la desestimación instada por los demandados.

Segundo error: Erró el Honorable Tribunal al desestimar la demanda fundándose en la falta de prueba pericial de los demandantes para establecer que los demandados venían obligados a advertir a la demandante (paciente) del resultado de un análisis previo a la operación (radiografía) cuyo resultado era negativo, para que de dicha forma se entendiera que el consentimiento dado por ella, al someterse al proceso quirúrgico, fuese uno informado y, por ende, válido. ”